**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DAWN MILLER,<br><br>    Plaintiff,<br><br>PRESTIGE CARE, INC., and<br>HOMEWOODS HEIGHTS, LLC<br><br>    Defendants. | Case No. 3:21-cv-219<br><br>**COMPLAINT**<br>UNLAWFUL EMPLOYMENT ACTION<br>Title I of the Americans with Disabilities<br>Act, FMLA, and supplemental state law<br>claims<br><br>**JURY TRIAL DEMANDED** |

## I. PRELIMINARY STATEMENT

1.     Plaintiff brings this action to remedy violations of Plaintiff's statutory rights

under FMLA - 29 U.S.C. § 2601 *et seq.*; Title I of the ADA, 42 U.S.C. § 12112, as well as

supplementary state claims. Plaintiff seeks equitable relief as well as attorneys' fees and costs.

PAGE 1 – COMPLAINT

## II. JURISDICTION

2.       Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. §1343, civil rights jurisdiction.

3.       Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

4.       All preconditions to jurisdiction pursuant to 42 U.S.C. § 2000e-5 have been satisfied.

a.       On November 12, 2019, Plaintiff filed a charge of employment discrimination and retaliation with the Oregon Bureau of Labor and Industries (BOLI), case number DPEMDP191112-11734, for violation of Title I of the Americans With Disabilities Act and Oregon Unlawful Employment Practice. BOLI co-filed a charge with the Equal Employment Opportunity Commission (EEOC), charge number EEOC No. 38D-2020-00201C.

b.       On November 12, 2020, issued Plaintiff a right to sue letter for case number DPEMDP191112-11734. This lawsuit was filed within 90 days of that date.

c.       On December 2, 2020, the EEOC issued Plaintiff a right to sue letter for charge number 38D-2020-00201C. This lawsuit was filed within 90 days of that date.

5.       Plaintiffs' claims are timely filed. Effective June 30, 2020, House Bill 4212 extends the statute of limitations for claims that have expired or will expire during the state of emergency declared by Oregon's Governor Kate Brown in response to the COVID-19 pandemic. The period of the state of emergency began on March 8, 2020, and has recently been extended.

PAGE 2 – COMPLAINT

6.      Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District.

## III. <u>PARTIES</u>

7.      Plaintiff, Dawn Miller (Plaintiff), is a citizen of the United States. At all times material, Plaintiff worked for Defendant in Clackamas County, Oregon.

8.      Defendant Prestige Care, Inc., (Defendant) is a Washington corporation, registered to do business in Oregon. Defendant does regular and sustained business in Oregon, including operating multiple retirement and assisted living communities in Multnomah County and Clackamas County, Oregon. Said Defendant does business as Homewoods Heights LLC and as Homewood Heights Assisted Living.

9.      Defendant Homewoods Heights LLC is a Washington corporation, registered to do business in Oregon. Defendant does regular and sustained business in Oregon, including operating Homewood Heights Assisted Living assisted living in Clackamas County, Oregon.

10.     At all times relevant, Defendant's employees and supervisors as their conduct is alleged herein were acting within the course and scope of their employment with Defendant.

## IV. <u>GENERAL FACTUAL ALLEGATIONS</u>

11.     Plaintiff worked for Defendants for her entire working life. On April 23, 2009, Plaintiff was employed by Defendants. Defendants assigned her to work at Homewood Heights Assisted Living Community in Milwaukie, Oregon. Plaintiff began working part-time, sixteen hours per week, in a kitchen utility position when she was sixteen years old and still in high school.

PAGE 3 – COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

12.    In July 2010, the month after she graduated from high school, Defendants gave Plaintiff full-time work as a cook in addition to other duties: kitchen utility; personal care attendant; housekeeping; and resident activities.

13.    In March 2015, Nancy Leifheit, the Executive Director of Homewood Heights Assisted Living hired Plaintiff on a trial basis as the Activity Director. On March 30, 2015, Defendants promoted Plaintiff to the permanent full-time position of Activity Director. As Activity Director, Plaintiff had no responsibility to drive residents to activities of any kind.

14.    The Community Bus Driver drove residents to community outings and to medical appointments. In June 2016, the Community Bus Driver, Ron Murk, retired. Though Plaintiff continued in her position as Activity Director, management split Mr. Murk's bus drive duties between Plaintiff and Maintenance Director Yuriy Pozhidayev. Plaintiff was given the responsibility to drive the bus for activity related outings such as shopping, lunch outings, and bus rides. Maintenance Director Yuriy Pozhidayev assumed the responsibility of driving residents to medical appointments.

15.    In May 2017, Plaintiff was trained to perform the Business Office Manager's duties. Plaintiff familiarized herself with and successfully performed those job tasks and duties while the Office Manager was absent from work.

16.    On May 16, 2017, Defendants revised the job description for Activity Director also known as Life Enrichment Director. The updated job description includes portions of the responsibilities previously held by the community bus driver. Defendants added "coordinates the transportation of residents to and from events outside of the residents, which may include driving a residence motor vehicle. Is accountable for all residents' presence when leaving or returning to a residence." The revisions to the job description do not require the person holding that position

PAGE 4 – COMPLAINT

to do medical transport of the residents. Transporting residents to and from medical appointments remained Yuriy Pozhidayev's responsibility. This was the last job description that Plaintiff was asked to sign.

17.    In August 2017, Plaintiff stopped driving the bus altogether because she was seven months pregnant. Due to her pregnancy, she was unable to bend over and assist the residents with seatbelts. She was also unable to strap down wheelchairs. Maintenance Director Yuriy Pozhidayev then took over all bus driving duties for both recreation and medical appointments.

18.    On October 1, 2017, Plaintiff started her maternity leave on FMLA. On October 14, 2017, Plaintiff's son was born after an emergency cesarean section. During the birth, Plaintiff experiencing birth trauma, postpartum depression, anxiety, and Post Traumatic Stress Disorder (PTSD). She also began having panic attacks. While Plaintiff was off work on FMLA, she received counseling for depression.

19.    On January 1, 2018, Plaintiff returned to work from medical leave. Plaintiff continued with counseling for her mental health condition. Mr. Pozhidayev continued to drive residents to and from medical appointments.

20.    On or about August 7, 2019, Plaintiff began taking medication for her depression and anxiety. The medication did not eliminate all her symptoms.

21.    On or about August 19, 2019, Defendants hired Monique Singh as the Executive Director of Homewood Heights Assisted Living. On August 24, 2019, Executive Director Monique Singh told Plaintiff that because she was cutting staff hours, from that point on Plaintiff was solely in charge of driving the bus. This included medical transport in addition to activity-related outings. Plaintiff did not agree to this change.

PAGE 5 – COMPLAINT

22.     On September 5, 2019, Plaintiff realized that driving the company bus for medical transport was aggravating her anxiety disorder. On September 5, 209, Plaintiff was driving all day long, taking residents to medical appointments, picking the residents up, and driving the residents back to the community. On September 5, 2019, Plaintiff had a panic attack while she was driving. Plaintiff reported to the Dining Services Manager Rocio Salazar that she had a panic attack while driving the bus for medical transport.

23.     On September 9, 2019, Executive Director Monique Singh sent Plaintiff an email. Singh wrote that Plaintiff's department was exceeding the budgeted hours for labor and that Plaintiff had to reduce her hours. Plaintiff then began working a day or two in the kitchen each week.

24.     Plaintiff contacted her primary doctor who wrote a note, excusing her from the medical transport duty, scheduled her for a second evaluation on October 8, 2019, and referred her to a psychiatrist. On September 10, 2019, Plaintiff provided Executive Director Monique Singh with this doctor's note. Plaintiff explained that she was suffering from Anxiety, Depression, and had a panic attack while driving the bus.

25.     On September 16, 2019, Plaintiff met with Executive Director Monique Singh, to discuss event planning and budgeting. During this meeting, Singh said that there was negative energy between them. During the meeting Plaintiff cried, hyperventilated, and told Singh that she was having a panic attack.

26.     On September 19, 2019, Plaintiff attended a staff meeting. Executive Director Singh required all care staff members to stay after the meeting finished for additional individual meetings regarding each department. In this meeting, Singh talked down to Plaintiff and belittled her.

PAGE 6 – COMPLAINT

27.    On September 20, 2019, Plaintiff was required to participate in a conference call with Defendants' Benefits Representative Susan Christian and Ms. Singh. At this meeting, Ms. Christian informed Plaintiff that Prestige cannot reasonably accommodate Plaintiff as recommended by her doctor and so the accommodation that she not drive for medical transport was denied. Ms. Christian asked Plaintiff if she had any other suggestions to resolve "your problem." Plaintiff suggested that Defendants hire a part-time bus driver since there previously was a full-time bus driver employed when Plaintiff was promoted into the Activity Director position. Ms. Christian said hiring another employee was not a reasonable accommodation from a business standpoint because it would cost money. Ms. Christian then said, "driving the bus is a vital task for the Life Enrichment Director and is listed on the job description." Plaintiff told them it was never expected of her before to drive medical transport. Plaintiff told them that she was to be re-evaluated by her doctor on October 8, 2019. Benefits Representative Susan Christian then agreed to give Plaintiff short-term accommodations and have Maintenance Director Yuriy Pozhidayev, continue to drive the bus for medical transport, but only if Plaintiff promised that she would come back on October 9, 2019, with no restrictions.

28.    On September 23, 2019, Plaintiff received an email from Executive Director Monique Singh. She wrote that due to the temporary accommodations the company was giving Plaintiff, she was directing Plaintiff to adjust her schedule and reduce her hours to meet budgeted hours for the Activity Department. Ms. Singh's justification was that Maintenance Director Yuriy Pozhidayev was driving the bus for medical transport. After looking over the budgeted labor hours for her department, Plaintiff discovered her department was not over budget in hours.

29.    On September 27, 2019, Plaintiff began the process with the Oregon Bureau of Labor and Industries Civil Rights Division (BOLI) to file an unlawful discrimination complaint

PAGE 7 – COMPLAINT

against Defendants. Plaintiff told Manager Rocio Salazar that she was filing a civil rights complaint with BOLI.

30.     On October 3, 2019, Plaintiff was walking past Business Office Manager Thao Dinh who called out to her "oh, this is for you." Ms. Dinh then handed Plaintiff a copy of a new job description for the Activity Director. Defendants added to the lists of essential duties "coordinates transportation of residents and operates van or bus to transport residents to events, appointments, and programs as needed by the community."

31.     On October 4, 2019, Executive Director Monique Singh directed Plaintiff to attend a meeting in her office. Singh, and Regional Director of Operations Karie Whitehead retaliated against Plaintiff. They gave Plaintiff a "final written warning" for making a calendar mistake by forgetting to input a volunteer group into the community calendar the prior month. This was the first warning that Plaintiff had ever received while employed by Defendants.

32.     On October 8, 2019, Plaintiff saw a psychiatrist on referral from her primary doctor. The psychiatrist extended Plaintiff's accommodations not to drive the bus to residents' medical appointments. The psychiatrist also prescribed antidepressant medicine which she said may take up to six weeks to provide Plaintiff with improvement.

33.     On October 10, 2019, Plaintiff sent an email to Executive Director Monique Singh. Plaintiff wrote that Singh was hostile toward Plaintiff, and she frequently talked down to Plaintiff like she was a child. Plaintiff explained that she suffers from anxiety and depression. Plaintiff explained how threatening and hostile Singh was acting toward Plaintiff. Singh never responded to this email or acknowledged it in any way.

34.     On October 11, 2019, Plaintiff had another conference call with Executive Director Monique Singh, and Benefits Representative Susan Christian, to discuss the October 8,

PAGE 8 – COMPLAINT

2019, note from her psychiatrist. They said since the psychiatrist's note "did not have an

expiration date" they "could no longer provide accommodations." Plaintiff told them driving for

medical transport was not previously listed on her job description. Susan Christian argued with

Plaintiff and said that it was listed on there. Ms. Singh and Ms. Christian next suggested Plaintiff

step down from her position and find another placement within the building. Plaintiff told them

that she did not want to step down from her position. Plaintiff also told them that due to childcare

needs, she was only available from 7:00 a.m. through 6:00 p.m. Monday through Friday.

35.     On October 14, 2019, Plaintiff learned that Executive Director Monique Singh,

had already posted an ad recruiting a replacement Activities Director, the position Plaintiff held.

36.     On October 15, 2019, Plaintiff had another conference call with Executive

Director Monique Singh, and Benefits Representative Susan Christian. Executive Director

Monique Singh's proposed a new schedule for Plaintiff that required her to work hours when

childcare was not available to her and was dramatically different from her prior schedule.

Defendants proposed that Plaintiff work on Sunday and Monday from 10:00 p.m. to 6:00 a.m.,

on Wednesday from 7:00 a.m. to 6:00 p.m., and on Thursday from 10:00 a.m. to 7:00 p.m.

Plaintiff reiterated that due to childcare she can only work from 7:00 a.m. until 6:00 p.m.

Monday through Frida and she was unable to accept this proposed schedule. Plaintiff told them

that Dining Services Manager Rocio Salazar offered Plaintiff thirty hours per week working in

the kitchen during hours when she had childcare. Executive Director Monique Singh said that

Plaintiff could not work in the kitchen because the kitchen work was only temporarily available.

Benefits Representative Susan Christian then asked Plaintiff if she has considered quitting. Ms.

Christian said they can no longer provide accommodations for her and suggested Plaintiff look

around at nearby Prestige locations to see what they are hiring for, explain her situation to them

PAGE 9 – COMPLAINT

to see if other Prestige locations would be able to accommodate her. Ms. Christian said "Do this now. The sooner the better."

37.     On the morning of October 18, 2019, Plaintiff sent an email to Executive Director Monique Singh, and Benefits Representative Susan Christian, explaining that she was searching for job opportunities at other Prestige locations within a ten-mile radius of her home in Oregon City. Plaintiff wrote that although there were many listings, the only opening that Plaintiff was qualified for was Kitchen Utility. Plaintiff wrote it would be detrimental to her career path if she stepped down into an entry-level position. Plaintiff wrote that it took her six years of work hard to climb into a management position and she would be faced with doing that all over again at a different building. Plaintiff wrote that she was unable to resign from her position as the Life Enrichment Director.

38.     On October 18, 2019, in the afternoon, Plaintiff had another conference call with Executive Director Monique Singh, Benefits Representative Susan Christian, and Human Resources Representative Kelli Mask. Ms. Mask said that "we have tried to work with accommodations for you, offering you an alternative schedule in different departments that you ultimately turned down. We are now forced to administratively terminate your employment." Plaintiff said that her current note from her psychiatrist did not have an expiration date on the accommodation because she just started a new medication and the doctor wanted to wait to see if Plaintiff had any negative side effects or needed to change it. Benefits Representative Susan Christian stated, "since there was no expiration date, we don't know when the accommodations would end, and we cannot accommodate you from the business perspective that it could cost us too much money." Plaintiff desperately suggested that she can work any days in the kitchen, that she needed a job to support her family. Singh said they had already moved forward with the

PAGE 10 – COMPLAINT

hiring process of another individual for the kitchen position. Singh then asked Human Resources

Representative Kelli Mask for a suggestion. Mask responded with "it's up to the administrator to

pick the best candidate." Ms. Singh declared this new candidate had many years of experience

working in a commercial kitchen and would be a better candidate. Plaintiff said "in the four

years of doing this job, I was never expected to drive for medical transport! It is not listed on my

job description. Now you're going to fire me because I have a doctor note?" The managers ended

the conversation saying that Plaintiff would receive a call when her final check arrived. When

the conference call ended, Plaintiff started crying, hyperventilating, and having another panic

attack sitting in Singh's office. Singh told Plaintiff that she needed to gather her belongings and

she was to be escorted off the property.

## FIRST CLAIM FOR RELIEF

(Title I of the Americans with Disabilities Act - Discrimination)

39.    Plaintiff realleges all relevant paragraphs.

40.    At all times material, each Defendant was an employer for the purpose of, and

subject to, the Americans with Disabilities Act (ADA).

41.    Plaintiff has an impairment, which substantially limits one or more major life

activities, has a history or record of such impairment, and was regarded by Defendant as having

such impairment.

42.    After Plaintiff disclosed Plaintiff's disability to Defendant, Defendant began to

discriminate against Plaintiff as alleged above. Said discrimination was based on Defendant's

failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work

environment.

PAGE 11 – COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

43.     At all relevant times, Plaintiff was able to perform the essential functions of Plaintiff's position, with or without reasonable accommodations. Plaintiff requested reasonable accommodations from Defendant.

44.     Each Defendant failed to engage in the interactive process with Plaintiff.

45.     Each Defendant's conduct violated 42 U.S.C. § 12112.

46.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

47.     Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

48.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

49.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

50.     The court should enter an order declaring that Defendant violated the ADA.

51.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

52.     Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and costs incurred herein.

PAGE 12 – COMPLAINT

53.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SECOND CLAIM FOR RELIEF

### (Title I of the Americans with Disabilities Act - Retaliation)

54.     Plaintiff realleges all relevant paragraphs.

55.     Defendant retaliated against Plaintiff for pursuing Plaintiff's rights in accordance with the ADA. Such actions by Defendant are in violation of the Americans with Disabilities Act.

56.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

57.     Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

58.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

59.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

60.     The court should enter an order declaring that Defendant violated the ADA.

PAGE 13 – COMPLAINT

61.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

62.     Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to an award of attorney's fees, expert witness fees, and costs incurred herein.

63.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

### THIRD CLAIM FOR RELIEF

(ORS 659A.103 et seq. - Oregon Rehabilitation Act)

64.     Plaintiff realleges all relevant paragraphs.

65.     Plaintiff is a 'disabled person' as defined at ORS 659A.104(1).

66.     Defendant is an 'employer' as defined at ORS 659A.106.

67.     After Plaintiff disclosed Plaintiff's disability to Defendant, defendant began to discriminate against Plaintiff as alleged above. Said discrimination was based on Defendant's failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work environment.

68.     Defendant failed to engage in the interactive process with Plaintiff.

69.     Plaintiff could perform the essential functions of Plaintiff's job with Defendant with or without the reasonable accommodations of allowing Plaintiff to continue to work.

70.     Defendant's refusal to provide reasonable accommodations for Plaintiff's known disability constitutes discrimination against Plaintiff due to Plaintiff's disability pursuant to ORS 659A.103 et seq.

PAGE 14 – COMPLAINT

71.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

72.     Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

73.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

74.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

75.     The court should enter an order declaring that defendant violated the Oregon Rehabilitation Act.

76.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

77.     Pursuant to ORS Chapter 659A and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorney fees and costs, including expert witness fees.

78.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

/////

PAGE 15 – COMPLAINT

## FOURTH CLAIM FOR RELIEF

(Family and Medical Leave Act of 1993 - 29 U.S.C. § 2601 et seq.)

79.     Plaintiff realleges all relevant paragraphs.

80.     Defendant is an 'employer' within the meaning of 29 U.S.C. § 2611(4).

81.     Defendant employed at least 50 employees for each working day during each of 20 or more calendar work weeks in the year prior to Plaintiff taking leave and in the year that Plaintiff took leave, 2017 and 2018.

82.     At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

83.     At all times in 2017 and 2018, Defendant employed 50 or more employees with 75 miles of the worksite where Plaintiff performed work for Defendant.

84.     Plaintiff was employed by Defendant for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave.

85.     Plaintiff was employed by Defendant for more than 12 months prior to commencing leave on or about October 1, 2017.

86.     At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

87.     Plaintiff took medical leave protected by the Family Medical Leave Act (FMLA).

88.     At all material times, Plaintiff suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

89.     Defendant interfered, discriminated, and retaliated against Plaintiff for engaging in the protected activity of taking leave under FMLA.

PAGE 16 – COMPLAINT

90.     Defendant interfered, discriminated, and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff and refusing to reinstate Plaintiff to employment.

91.     As a direct and proximate result of Defendant's interference, discrimination and retaliation, Plaintiff has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other expenses, all to Plaintiff's economic damages in an amount to be determined at trial.

92.     The court should enter an order declaring that Defendant violated the FMLA.

93.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

94.     Plaintiff is entitled to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A).

95.     Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to an award of attorney's fees, expert fees, and costs incurred herein.

96.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## FIFTH CLAIM FOR RELIEF

(Oregon Family Leave Act - ORS 659A.150 et. seq.)

97.     Plaintiff realleges all relevant paragraphs.

98.     Plaintiff took medical leave protected by the Oregon Family Leave Act (OFLA).

99.     Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the year 2016.

PAGE 17 – COMPLAINT

100.    Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the year 2017, the year Plaintiff took leave.

101.    Immediately prior to commencing family leave in 2017, Plaintiff worked for Defendant for more than 180 days.

102.    Plaintiff worked an average of more than 25 hours per week for Defendant during the 180 days immediately preceding the date on which Plaintiff commenced family leave.

103.    At all material times, Plaintiff had a serious health condition as that term is defined in ORS 659A.150(6).

104.    Defendant interfered, discriminated, and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff's employment.

105.    As a result of Defendant's interference, discrimination, and retaliation against Plaintiff, Plaintiff suffered and continued to suffer economic losses.

106.    As a result of Defendant's discrimination and retaliation against Plaintiff, Plaintiff is entitled to equitable relief.

107.    Pursuant to 659A.885, Plaintiff is entitled to recover back pay.

108.    The court should enter an order declaring that defendant violated the OFLA.

109.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

110.    Pursuant to ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorney fees and costs, including expert witness fees.

PAGE 18 – COMPLAINT

111.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

112.    Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

113.    Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

114.    Plaintiff is entitled to a declaration that the conduct of the Defendant violated ORS 659A.230.

115.    The court should enter an order declaring that defendant violated ORS 659A.230.

116.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

117.    Pursuant to ORS Chapter 659A and ORS 20.107, the Plaintiff is entitled to recover reasonable attorney fees and costs, including expert witness fees.

118.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

### SIXTH CLAIM FOR RELIEF

#### (Wrongful Termination)

119.    Plaintiff realleges all relevant paragraphs.

PAGE 19 – COMPLAINT

120.     Defendant's conduct, as alleged, was in retaliation for Plaintiff's assertion of Plaintiff's state and federally protected rights to work in an environment free from discrimination, harassment, and otherwise hostile work environments, and as such constitutes a wrongful discharge under state common law.

121.     Plaintiff's remedies under state and federal statutory law do not constitute a complete remedy for the damage Defendant has inflicted.

122.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

123.     Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

124.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

125.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

126.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

127.     Pursuant to ORS 20.107, Plaintiff is entitled to an award of attorney fees and expert witness fees.

PAGE 20 – COMPLAINT

128.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendant:

1.    A sum which will fully compensate Plaintiff for Plaintiff's non-economic damages in a sum that is just as determined by a jury;

2.    A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a sum that is just as determined by a jury;

3.    Equitable relief, including but not limited to, reinstatement if Plaintiff so chooses;

4.    Liquidated damages;

5.    Plaintiff's costs and disbursements incurred herein;

6.    Plaintiff's attorney fees; and

7.    For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: February 9, 2021

**Law Offices of Daniel Snyder**

*/s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249

Of Attorneys for Plaintiff

PAGE 21 – COMPLAINT